Okay, Mr. Gleeson. We've got Smith v. Slott. Good morning, may it please the Court. I'm Kevin Gleeson, Florida Bankruptcy Group. I represent the appellants, and I need your help. Boy, we need your help. Let's work together. There's five. I'm all for that. There's five issues that are bothering us. I mean, there's two creditors here who filed proofs of claim and therefore are a party to the bankruptcy proceeding. And it seems to me clearly if there's a substantive consolidation issue as to them, that could be resolved by motion. I don't see why that would require an adversary complaint because the effect of it is, as I understand it, you can tell me if I'm wrong, is that effectively if they are the alter ego of the debtor and the requirements for substantive consolidation have been satisfied, their claim, their proofs of claim would be extinguished. But they're already parties to the bankruptcy proceeding. There's no need to file an adversary complaint against them. They're parties. They have notice if they're given a motion, as they would be any other motion in the case, and they can have an opportunity to be heard on that. What am I missing as to them? A lot. When one files a claim, one submits oneself to the process of claims resolution in the bankruptcy court. Right. Substantive consolidation is a disemboweling of a corporation's assets and terminating its existence. That's not adjusting the debtor-creditor relationship. And in no other context. Well, I mean, wouldn't a basis for disallowing the claim be you're not really a creditor? You're the alter ego of the debtor. And for that reason, I'm not allowing your claim. And the court is understandably confusing alter ego with substantive consolidation, as most of the cases do. That's the basis, as I understand what the bankruptcy court is doing. The reason the bankruptcy court is saying this can be substantively consolidated is because these are alter egos. You have to your left an expert on alter egos. No, he's actually to my right. No, actually, Judge Abudu most recently wrote a very thorough. I thought you were talking about his student note or something in Harvard Law School. Well, we don't get into the clerkship years, okay? This is actually pre-clerkship. No, Judge Abudu just wrote, I'll say, definitive summary of Florida law. Florida law is alter ego. What the judge did here is federal. That's not what I'm talking about. Can I ask a question about this? Sure.  So what is the difference in practice between what happened to you or your clients? They were given a motion delivered by first-class mail versus an adversary proceeding where you would be served with a complaint by first-class mail. The difference is if you have four defendants, the complaint has to allege sufficient grounds as to each defendant, and each defendant has its own ability to answer, and each defendant would have its own ability for affirmative defenses. That's the difference. What we had here was essentially just a stew pot of allegations that were thrown onto all four, and they're very different. So what would have been the affirmative defenses that you wanted to raise that you weren't allowed to raise because of this motion, and did you try to raise those in response to the motion? Well, there's no affirmative defenses to a motion. There's no process. There's no answer. Did you have an opportunity to respond to the motion? I responded to the motion with the same grounds that bring me here today.  No, but you didn't say, well, if you do this by adversary complaint, I could raise all these affirmative defenses. Here's what it would be. Here's how this proceeding would look different. Here's why you actually could come to a different conclusion than what the bankruptcy court found. Don't I wish I said that, Your Honor? Well, that's the problem we're grappling with. You didn't say that. Well, let me, if I could, direct your attention to the bigger problem here. I mean, there's five things that I find bothersome. I want to address the ones you find bothersome, but I also want to get on the record. What I think is bothersome is taking a case from the act that was repealed and continually using that case 80 years later after the code has repealed the act. And SAM cell must die. It does not stand for the proposition that every case cites for substantive consolidation. It's not even the substantive consolidation case. Okay, but you, that's, so we would only get to that, right, if we said that you could raise that for the first time on appeal? No, I raised subject matter jurisdiction instantly. Subject matter jurisdiction. Subject matter, how does this go to subject matter jurisdiction? Well, in the same way that the Supreme Court in recent years has said the bankruptcy court is a court of limited jurisdiction, it can only do the things that Congress says it can do. And you can't use 105 as this magic wand for defense against the dark arts. You have to do what the code says. And every case starts with, well, the code doesn't actually let us do substantive consolidation, but SAM cell does. Right. So your argument is that, like, bankruptcy courts don't have jurisdiction for purposes of assessing whether debtors should be substantively consolidated? Is that what you're saying? I'm saying that this. Because I thought your argument was just this was an improper substantive consolidation. I thought that was your argument, which doesn't seem to have anything to do with jurisdiction at all. Well, that's one of my arguments was that there should have been an evidence. You also argued that there can't be substantive consolidation. Exactly. Because the code provides other means to do it. But that's something you didn't argue to the bankruptcy judge, though, right? I argued lack of subject matter jurisdiction. Right. You can't do this. And, you know, you have a conflict in this circuit. You have two judges who said that SAM cell has no clothes. And you have the other judges saying, oh, SAM cell is fully clothed. Not any circuit judges, right? No. That's the beauty. You don't have to reverse anything at the circuit level. There's nothing binding at the circuit level. Reeder involved a husband and wife and denied consolidation. Okay. Well, your time is running, Counselor. And so let's say that you lose on the subject matter jurisdiction issue. Now we're looking at the factual findings. And I'm seeing the court relied on East Group and found a commingling of financial affairs, that there was a unity of ownership. Mr. Smith owns everything. Commingling of assets had to change. I think you transferred some assets, but one company didn't pay for it. It wasn't noted on what kind of annex lien, I think, was involved. What was wrong, erroneous, about those findings? Well, you have in the center of the panel today the expert on what's not a fraud. Corporations can swap money all the time. There has to be someone damaged by it. And there's no findings below that any fraudulent transfers were made from the debtor to any of these entities. There were transfers found. They weren't quantified, and there was no determination that they're fraudulent. So as far as the findings in the court below, yeah, this man who owns these companies would move his money around to do what? Pay bills. Whoever needed the money got the money. You got a bill over here? Oh, we'll put the money in there. We'll pay the bill. Well, and that goes to the point of why the bankruptcy judge substantively consolidated these entities is because the owner of the entities was treating them as one economic unit where he could just move stuff around from one to the other. So, I mean, that's what the bankruptcy judge said is the basis for the substantive consolidation. He did. And, of course, there was no evidentiary hearing. So my clients could not go in and say, no, we weren't treated as. . . Did you ask for one? I objected to the lack of one. I guess you could say I asked for one. Well, and that goes to, I mean, I think what Judge Abudu. So what the bankruptcy judge did is said, no, we had hearings about this, and you were here pointing to. . . You. Yeah, like everybody on your side basically, your client, you. I realize these entities weren't here, but the whole point of the substantive consolidation is that, like, you're basically all the same thing. Why was the bankruptcy judge wrong to say, like, we're not going to have another hearing on the same stuff we've been having hearings on just because we have some new LLCs in the case? Well, you have the binding case law from the Supreme Court through this court up to now that says the issues had to be the same. They weren't. You had a statutory motion to convert. The parties had to be the same. The motion was between one creditor and the debtor. Explicate out how the issues were not the same because I think that. . . Explain to me how that's. . . Okay, well, of course, the earlier decision has to. . . You have to be able to determine what was key, was at the heart of the earlier decision. And the earlier decision gave at least 15 different grounds for why the case should be converted from one chapter to the next. But substantive consolidation was not even mentioned in the pleadings. I used the pleadings loosely in the motion practice. I get that, but the bankruptcy court didn't say the legal issue was determined in the previous proceeding. The bankruptcy court said these factual things that would lead us to have a new hearing, that was determined in the previous proceeding. I agree, but the legal issue had to be the same. You think the legal issue has to be the same to have collateral estoppel? Yes. Oh, okay. It has to involve the same issues. But even if it's the same fact issues, you think you get a new hearing to reestablish facts? Sure. If you have a hearing on a statutory motion that has specific grounds for conversion, that doesn't translate into this equitable whatever SAMHSA is, and I'm sorry I didn't get a chance to destroy it because SAMHSA should never be followed, should never have been followed, and I hope this court will side with the SAMHSA has no clothes, two judges who said it's dicta and we can't follow it. And perhaps in my five minutes remaining, I'll get to that. Any other questions? Well, I guess I just wanted to be clear because I don't want to leave here assuming a concession, but you focus so much on the jurisdiction and the validity of the consolidation, but if we get past that and look at the findings, are you saying that we can't accept these findings because you didn't have a chance to rebut them? I'm saying that my clients were not parties. In fact, under the jurisdictional question the court raised, my clients would not have had standing to appeal from the conversion order. They weren't adversely affected by the conversion order. It's like, do you remember the old movie Sybil? I'm older than you are, Your Honor, so I think I do. Yeah, multiple personalities, a schizophrenic. Effectively what we have here is a bankruptcy judge who says we've got Sybil, and Sybil claims that, well, you adjudicated the rights of Margaret but not Sybil because I haven't had my adversary proceeding and I haven't had my opportunity, and what the bankruptcy judge is saying is you may have multiple personalities, but you're really all the same person. And, Your Honor, I have to take exception to that. On the one hand, it's actually a determination of whether Sybil ran a red light, and on the other hand, should she be committed? These are very different issues. Well, the issue about whether this entity, the debtor entity has treated these other entities as its alter ego seems to have been something that was determined in the conversion, and that alter ego, those alter ego determinations, the bankruptcy court said, lead to the same conclusion about substantive consolidation, and you, at least as I could tell from this record, you didn't really explain why that's not true. I'm way over, shall I? You can respond. Your Honor, I have to use the term falling into the trap of equating alter ego and substantive consolidation. They cannot be more different. Alter ego requires. Okay. I can tell you this isn't going to go anywhere. I've got a question that maybe this will explain. Maybe you can answer this one maybe. If the bankruptcy court determined as part of the conversion, this is a hypothetical, the bankruptcy court determined that the reason I'm converting this is because LLC number one and LLC number two are operating as the same economic entity. They're moving money back and forth over the course of their lives as LLCs. They're treated as, you know, as you said, like when bills come due on LLC one, LLC two just pays those bills. The bankruptcy court determines that as part of the conversion. Those facts are determined. And then the question of substantive consolidation arises. Why can't the bank, why isn't the bankruptcy court correct to say, look, I've already determined how these entities treat each other. Yeah, there's a different legal question. Like even light of those determinations, I have to determine whether to substantively consolidate them. But I'm not going to have another hearing about how the LLCs treat each other. I've already had a hearing on that. Why isn't that a correct thing for a bankruptcy court to do? Because in operation, the LLCs were quite separate. No, no, no. Give me my hypothetical. The hypothetical is that there's a determination that they weren't separate. No, I understand. You said economically. Yeah, yeah. So that's what the bankruptcy court says. Like these are not separate. They're treated this way. I'm determining this. It could be anything. It could be a conversion. It could be like a fraudulent conveyance action, like whatever. Bankruptcy court determines this. And then the same issue arises in the context of substantive consolidation. Why would a bankruptcy court say we need to have another hearing over how these entities treated each other, another evidentiary hearing? Well, because they weren't parties to the first hearing. Okay. It's a different legal issue and different factual issue. Before we completely test the Chief's patience, what additional information? And maybe you can answer. I will defer to the Chief if you want to answer this in your remaining time later. What additional evidence would you have wanted to present that wasn't already before the court? That would be my question whenever the Chief answers. That's a great question. I'd love to hear the answer. And I will. Part of my actual objection below was that the court was required to use alter ego because there's no such thing as substantive consolidation in the   Look. What is it? And when you use alter ego, which is a state law remedy, it's a remedy. It's not a cause of action. And so you have to have an offense, something that harmed the debtor. There's been nothing here that demonstrated harm to the debtor. And then an alter ego, you go up through the ownership. Mr. Smith wasn't a party. And then you go sideways into the other entities. And each one has to be guilty of some improper transaction. Those weren't found here. And I argued that you can't do alter ego without following Florida law, which, by the way, would always be by complaint. Okay. Mr. Malnick, let's hear from you. You know, sometimes when oral argument is granted, it is not a compliment. It means we're befuddled by the briefs. We resolve 80 percent of our appeals around here without oral argument, more than 80 percent, because we get briefs from lawyers who tell us what we need to know and we can resolve the case. But a fair number of cases that are put on the calendar, we feel like we need some help, because we can't figure out what to do with the case. Mr. Malnick, I hope you'll help us. Thank you, Your Honor. May it please the Court, my name is Zachary Malnick, appealing on behalf of Appellee Sonia Slott, the Chapter 7 Trustee for the Bankruptcy Estate of No Rust Rebar Incorporated. I'm going to start answering Your Honor's last question to Mr. Gleeson, which was, what evidence would these entities have put on at the bankruptcy court level that they didn't have an opportunity to do? And the answer to that is none. At no stage in these proceedings have they ever challenged the VECA or East Group analysis. The bankruptcy judge below made us go through two hearings. He ordered supplemental briefing. He made me go through and list, entity by entity, each specific factual allegation held in the conversion order citing to the conversion order itself in the record of that hearing. We did that. We did a case-by-case analysis, entity-by-entity analysis. I don't know what more, you know, if it was in a complaint, it's the same, there's the same notice given. Is it odd though to file a motion where a non-party is then obliged to come in and respond to it? I mean, usually, don't you have to do something more formal than that to make someone a party to the proceeding first? I don't believe so in the bankruptcy context. Rule 9014 is a contestant, sets forth contestant matters. And, you know, a contestant matter could be as simple as a motion for a third party under section 542 of the code. The service required under 9014 incorporates 7004 service, which is service in most cases by first-class mail. And that's how you establish personal jurisdiction. The district court below in the case of, in the matter of Smith, points to a non-appearing attorney and sanctioning her and making her subject to jurisdiction. Yeah, I understand an attorney. That's a different kind of problem. I think it's, you know, people, you know, the bankruptcy court regularly exercises jurisdiction over banks, third parties, under multiple sections of the bankruptcy code. Let's say you have a debtor, right, who's engaged in fraudulent conveyances, right? Ordinarily, would you file an adversary proceeding against the transferee? And we did, Your Honor. Subsequent to the substantive consolidation order, we filed an adversary proceeding against Mr. Smith. We obtained a judgment against him for $1.2 million in change. His point is just, I mean, I don't want to put words in your mouth, but I mean, it's a question I have too, which is, wouldn't the normal situation in a case like this one, when you've got a party out there who's operating and you want to say, look, we want to get your assets and bring those assets into the bankruptcy, isn't that an adversary proceeding as opposed to a contested matter? It's a fraudulent conveyance. It's a whatever. That's the way you would do it. That's exactly what I'm getting at. Yes. But I think there's a distinction where in those cases you're moving under Section 548, 547, or 549. Substantive consolidation stands separate and apart from those code provisions. But there's not a code provision that provides for it. No. No. And that was Mr. Gleeson's strident objections about SAMHSA. Well, but if there is one, it's just equitable powers, right, other equitable relief, right? I mean, that's the idea. And isn't that also incorporated by the adversary proceeding statute? I don't believe so, Your Honor, as the district court below applying the canons of statutory interpretation looked at it. And substantive consolidation is not a proceeding seeking an injunction. It's separate and apart from that. And if it was requiring an injunction, that's when it would require an adversary proceeding. Yeah, but I mean equitable relief isn't just injunctive relief. I mean, equitable relief, I mean, is doing equity, right? And, I mean, it seems to me like substantive consolidation as a doctrine is about sort of the equitable power of a court to say, look, there are six LLCs here. They're all operated as the same economic unit. It's not equitable to have the creditors of one get all the money out of this. We need to consolidate them together, consolidate the creditors together, and treat them as the economic unit they are. I mean, what is it if it's not equitable? Well, I think we have to be very precise with statutory interpretation when we're looking at other equitable relief meant all equitable relief, the word injunction would then be superfluous inside that statute. And since injunction is a form of equitable relief itself, so I don't believe that the adversary proceeding would be required. Tell me this. Why did you want substantive consolidation? And I ask that in this way. So I can see where the effect of substantive consolidation, you correct me if I'm wrong about anything I'm about to say, okay, but for the two entities that have filed proofs of claim and are purportedly creditors, the finding that this is all one economic unit, one economic entity, it would seem to me would inevitably lead to the dismissal of their proofs of claim. The resolution would be you're not really a creditor of the debtor. You're part of the same unit. I don't think we've actually had that determination necessarily, but that seems to be the logical consequence of the consolidation. But it's not at all together clear for me what the point of these other non-party entities being substantively consolidated was. And will you be able to answer that question from something in the record that will show me why the trustee wanted to do this? Do they have purportedly like some bank accounts that you're concerned about? What's going on? Absolutely, and I think this is all certainly a matter of record. This is all docket pleadings in the underlying bankruptcy case and going up through. So by substantively consolidating, we have now broadened under 541 the bank accounts, the property of the debtor that was now no less rebar. Subsequent to this, the trustee has filed somewhere between a half dozen to a dozen adversary proceedings under Section 549 to recover unauthorized post-petition transfers out of the sub-con target entities. And that was the primary purpose of the sub-con. One, yes, obviously, to disallow the claims of the two that filed the personal claims, but it's broader than that. It was to be able to recover somewhere between $2 and $3 million that these alter ego companies misappropriated during the Chapter 11 phase of this bankruptcy. That's the purpose of this case. The underlying entities had no assets that the trustee sought to administer. It was intellectual property that was worthless from a marketing standpoint, but that's the purpose of the sub-con was to be able to file these 549 complaints because absent the sub-con declaration and the order, it wasn't property of the debtor that was transferred without court authorization under 549. So the substantive consolidation order was the factual and legal predicate that we needed to bring those 549 actions. It seems to me, though, and first I will say I am not the expert. You all are the experts. And so my question is, to the extent counsel on the other side's argument has any legs, the fact that it was Mr. Smith who owned all these companies, I think was important. But if we're talking about other individuals who received funds from Mr. Smith's one company but had a different understanding as to the purpose for those transfers, he's doing it arguably to hide money from his creditors. Those other entities, which he has a part of but doesn't solely own, had a different understanding. Is that what I just proposed or presented? Is that a different factual scenario that would support the reason why perhaps a third evidentiary hearing would have been required? Because now you have other individuals who might have a different understanding as to what Mr. Smith was doing. Well, I think, and this goes back to the notice requirement, as part of the substantive consolidation motion, we served upon all of the subsequent people that we sued. Any creditors of the alter ego entity companies, which there were none, but we also served all future litigation targets because it's precedent in other cases if they didn't receive notice of the substantive consolidation motion, notice of hearing. And if you allege that those transfers were fraudulent, they can all come in and defend against that. Absolutely. It happens with some regularities. They're entitled to hearings about that. You don't dispute that. No, not at all. They are parties that certainly would have had standing to come in and contest the substantive consolidation motion. And that happens. But I don't know. A contested matter enables the defendants, I don't want to say defendants, the target entities, all the protections pretty much attendant to Rule 26 and discovery if they ask for it and the court orders it. The court didn't have the, I don't know that they formally requested anything in this case, but had they, the court denied it because it wasn't needed, because the court had already held four days of evidentiary hearings with Mr. Smith testifying over and over again as to what he thought was the thing, but the court is very clearly in what was the law of the case of the unappealed conversion order. That's final and binding. Mr. Smith was testified, right? He testified. He's the creator of all these units, right? He's the creator. He's the sole person. He's the sole owner of every one of the units, right? Absolutely. There's no third parties involved. And that's what makes this a distinguishing and quite frankly simple fact pattern for subcon that's not testing the broad reach of this. If there was actual third parties, let's say Mr. Smith had his wife as the owner, that's when we get into some more thorny jurisdictional questions here. This is Mr. Smith through and through. There's no other party here involved in this. And that's what makes this a simple substantive consolidation case that can be brought via motion and is regularly done throughout every district in the 11th Circuit, routinely files these via motion. Let me ask you a question about the difference between an adversary proceeding and the contested matter. I guess my main question is, is there any difference at all? The only difference is the summons itself. And that summons would be served via the exact same way as the motion, which is service via first-class mail. So when I asked your opposing counsel that question, he suggested that there was like an in-op. You can have the opportunity to raise defenses and he said some other stuff like that. Could you just comment on that? The court implored him to file a response. At no point did they choose to engage in challenging VECO or East Group. They could have challenged all of these factual legal conclusions. They didn't. They had every opportunity, two hearings, supplemental briefing. The court was very concerned at the first hearing and took ample consideration that they wanted to make sure that there was such notice and opportunity to respond that it gave that supplemental briefing and a further hearing a month and a half later. So they certainly could have raised, you know, they could have couched affirmative defenses in a response in opposition. I don't know that an affirmative defense is a magic wand that changes. He couldn't identify any affirmative defenses he wanted to bring anyway, so I don't know that there are any available. Absolutely, and we would have directly challenged those at the bankruptcy court level. Could you just explain too, I mean, and you're a practitioner in this, so that's why it's helpful, as the Chief mentioned at the get-go, but, like, I mean, I know what a motion looks like. What is, I mean, is a complaint in an adversary proceeding like the same thing that we would see in, like, a civil action, just a complaint with a summons the same way you would see if you sued somebody under Title VII or something like that? It would have been the exact same thing. Okay. What would be different about the motion that you filed in a complaint? Like, would there be anything different as far as what's written in it? No, I would just couch it as a count as opposed to a request for relief, and I would just go through that count. I thought in an adversary proceeding of that kind, where there's a summons and complaint, that there would be a cause of action and a claim for relief. Yeah, and it's just rewording. It's the same text. It would be the same text. It would be a count seeking. Tell me this on a practical level. When the motion to consolidate was served by mail, first-class mail, on these entities, exactly where was it sent? What was the address? It was, I believe, the registered agent of each of these entities, which would have been Don Smith at his home address. Right. And I think we sent it four or five times to the same address. Yeah, it all went to the same address. It all went to the same address. It all went to Mr. Smith. No one's challenged the adequacy of the service process itself. This was clearly served correctly via first-class mail, and I don't want to use adverse influence against them, but they clearly knew of this. They showed up through counsel at all of the hearings. So it's like serving Sybil and then sending first-class mail to Margaret and all the other personalities too. Every target entity got notice.  Every future. Every personality. Yep. Every one of Sybil's personalities got named at the same address. We sent it all to the same place, Your Honors. I understand. And I have nothing further. I think there's ample grounds to affirm, but I'm happy to answer any further questions if any of Your Honors has any. I don't hear any. Thank you. Quickly, Mr. Gleason, we've got five minutes. You're not going to help me kill Samsell. So as my question, I think the challenge for me at least is that we've got one common denominator, which is Mr. Smith. I would be a little bit more. I think your argument would have more legs if there were other individuals or really separate entities involved, but how do you get over this procedure when it's the same person? The result of the procedure was what the Supreme Court said was an Orwellian vehicle for revisionist history in the Acevedo case, which I cited. Because what Mr. Malnick said, Your Honor, asked about fraudulent transfers. No, they didn't sue for fraudulent transfers because there weren't any. They sued for post-petition unauthorized transfers because they were able to get all these entities dated back to the date of filing a petition. While the case was on appeal, the order was changed to go back two years and four months. I mean, I know you want to kill Samsell, but it seems to me that there has to be a power on the part of the bankruptcy court to recognize who the debtor is. And if there are entities that truly are just alter egos. It presumed the conclusion. Yeah, but the problem is the . . . Do you agree, though, that if a bankruptcy court makes all the findings necessary to establish that these allegedly separate entities are in fact alter egos, that it can then treat all the entities as the debtor? Do you contest that? I don't contest that if the court made findings consistent with the requirements of alter ego under Section 544 of the Code invoking state law, that it would be a much more difficult case. In this case, we don't have that. We don't have that. It would not just be a more difficult case. Surely the bankruptcy court has the power to decide who the debtor is.  And that's really part and parcel of that determination, isn't it? As properly done under 544 with the existence of an actual creditor who had the right to raise alter ego. Yeah, I understand you think there are procedures that have to be followed about it. No. You don't doubt that. Substantive law. But you don't doubt that at the end of the day, if the substantive law and the facts that support it establish that multiple entities are in fact just an alter ego of the debtor, a bankruptcy court would have the power to treat them all as the debtor. Yes. You don't contest that, right? I don't contest that alter ego is within the power of the bankruptcy court. I do contest that substantive consolidation is within the power of the bankruptcy court. They all say the code doesn't permit us to do this, but we're going to do it anyway. Stephanie, the clock's not working. I cast a spell on it. Well, I'm going to cast another spell. All right. May I do Sam cell? Yeah. You can say whatever you like. I'll speak quickly because it might take long. We have to go back to 1933, the Act case. In 1933, Mr. Downey obligated himself to a company called Standard. Three years later, Downey transferred his business interests to Downey Wall and Paper Paint Company, distributing the shares among himself, his wife, and his son. Downey filed a voluntary petition in 1938, and what's significant is that just about a month before he filed, the Chandler Act passed, which extended the fraudulent conveyance period from four months to one year, but the trustee couldn't avoid that transfer because it was two years. So what we had was a trustee making a determination there had been a fraudulent transfer for which he had no remedy. Ah, as Your Honor has said, it's axiomatic that equity kicks in when there's no remedy at law. And so the remedy was that if you look in the circuit court opinion, the referee found under California law that the entity was an alter ego, not substantive consolidation, California law alter ego. And another thing that happened in 1938, none of us were there, is that September 16, 1938, the difference between equity and law was abolished. So these tropes of it's a court of equity, they go back to Katzen, Katzen's an act case, bring it up to modern evaluations, the Supreme Court has said, the Bankruptcy Court is a court of limited jurisdiction, and we're going to enforce that limited jurisdiction. And the court said in the Purdue Pharma case, one of the more recent ones, that the court, the code, and I'll quote, it provides Bankruptcy Court with a, that it does not provide Bankruptcy Courts with a roving commission to resolve all such problems that happen its way, applying to the role of other mechanisms. Thank you, Mr. Gleason. Very well. We appreciate it. And we're in recess until tomorrow. Thank you.